Christina VINCENT, Appellant,

v.

WEST TEXAS STATE UNIVERSITY, Thomas Kale, Marvin Patton, Ed Dempsey, Ray Blevins, and Ray Turman, Appellees.

No. 07–94–0171–CV.

Court of Appeals of Texas,
Amarillo.

March 14, 1995.

Law Offices of Charles W. Crow, Charles Crow, Amarillo, for appellant.

Atty. Gen. of Texas, Asst. Atty. Gen., General Litigation Division, Jose M. Rangel, Austin, for appellee.

Before REYNOLDS, C.J., and DODSON and QUINN JJ.

QUINN, Justice.

Christina Vincent (Vincent) appeals from an Order Granting Defendants' Plea to the Jurisdiction and Order Granting Defendants' Motion for Summary Judgment. In five points of error, she contends that abatement rather than dismissal was the proper remedy, that dismissal deprived her of due pro-

cess in claiming damages under the Texas Tort Claims Act and the theory of wrongful discharge, that summary judgement was improper due to existing issues of law and fact, and that dismissal violated public policy and 42 U.S.C. § 1983. We disagree and, therefore, overrule each point.

## FACTS

According to the second amended petition, Vincent sued West Texas State University (WTS), and WTS employees Thomas Kale, Marvin Patton, Ed Dempsey, Ray Blevins and Ray Turman (collectively referred to as the Employees) for sexual harassment, retaliation, denial of "free speech" accorded by the Texas Constitution, violation of the "Texas Constitution, Article 3a," and wrongful termination. Each allegation arose from the sexually harassing conduct of Dempsey, Blevins and Turman, her co-employees at WTS. Furthermore, she averred that her superiors, Kale and Patton, did nothing to end the misbehavior, that her job performance underwent unjust criticism, and that her eventual discharge violated official policy and procedure.

Vincent never complained of her treatment to the Equal Employment Opportunity Commission (EEOC) nor the Texas Human Rights Commission (Commission). Instead, she notified the WTS president of her grievance.

Eventually, suit was filed on August 23, 1991. The Appellees joined issue by answer and amended their pleading on June 8, 1992, to allege sovereign and quasi-judicial immunity. Approximately seventeen months later, on November 10, 1993, WTS and the Employees moved for summary judgment. They believed themselves entitled to same not only because of the immunity accorded a sovereign but also their opponent's failure to exhaust administrative remedies. Twelve days later, Vincent filed her first amended petition which, for the most part tracked the original. However, on November 30, 1993, approximately four days before the pending summary judgment motion was heard, a second amended petition was filed. It too focused upon the conduct and causes of action underlying her first two pleadings. Added, however, were allegations complaining of her termination in violation of established policy and procedure, denial of "free speech to complain about [the sexually harassing] conduct ... [in] violation of the Texas Constitution, Article 1, § 8," denial of her "right to be free of sexual harassment and to complain and receive relief as assured by Texas Constitution, Article 3a [sic]," and wrongful discharge "for exercising her right of free speech to complain about the Defendants' failure to follow procedures and policies...."

Accompanying the second amended pleading was Vincent's response to the motion for summary judgment. In it, she suggested that the proceeding should be abated while she secured legislative permission to sue the State for sexual harassment, that only the claim of sexual harassment would require legislative approval, that she could, in the alternative, immediately proceed under the Texas Tort Claims Act, that the motion was tantamount to a special exception, and that she complied with the administrative review procedures demanded by the Texas Commission on Human Rights Act.

The trial court ultimately entered both an "Order Granting Defendants' Plea to Jurisdiction" and an "Order Granting Defendants' Motion for Summary Judgment." The former dismissed the suit to the extent that it averred claims against the Employees "in their official capacities." The latter mentioned no specific basis but simply ordered that Vincent "take nothing" from her six antagonists.

## ABATEMENT V. DISMISSAL

In point one, Vincent contends that the court erred in dismissing rather than abating her action. Abatement would have afforded her an opportunity to secure legislative approval to pursue her claim for sexual harassment against the State, preserve her work product developed to date, and avoid the need to file another suit. We disagree and overrule the point for several reasons.

### a. Argument Untimely

■ First, the argument initially appeared in Vincent's response to the motion for sum-

mary judgment. The latter, like her second amended petition, was filed four days before the December 3rd summary judgment hearing and in violation of the deadline prescribed by Texas Rule of Civil Procedure 166a(c). The record does not reveal whether she obtained leave of court to so act belatedly. Under this circumstance, we may not consider the response or its contents. *Washington v. City of Houston,* 874 S.W.2d 791, 794 (Tex.App.—Texarkana 1994, no writ); *Atchley v. NCNB Texas Nat'l Bank,* 795 S.W.2d 336, 337 (Tex.App.—Beaumont 1990, writ denied); *Goswami v. Metropolitan Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 n. 1 (Tex.1988); *accord, Equisource Realty Corp. v. Crown Life Ins. Co.,* 854 S.W.2d 691, 694–95 (Tex.App.—Dallas 1993, no writ) (holding that the legality of the summary judgment therefore depends solely upon the sufficiency of the movant's evidence and authorities).[1]

### b. No Need for Legislative Consent

Even had Vincent timely urged abatement rather than dismissal, the trial court, nevertheless, acted properly. Contrary to her suppositions, sovereign immunity did not pretermit recovery for sexual harassment. The bar was waived when the legislature passed the Commission on Human Rights Act (CHRA). That statute forbade an employer from discriminating. Furthermore, the term "employer" encompassed political subdivisions, state agencies and instrumentalities, as well as *public institutions of higher learning.* Tex.Rev.Civ.Stat.Ann. art. 5221k, 2.01(5). WTS fell within, at the very least, the latter category and was subject to private suit. *Id.* at §§ 6.01(a) & (e) & 7.01(a) & (g).[2] Therefore, granting Vincent abatement to secure legislative approval to do that already permitted by statute would have been meaningless.

1. Like treatment is not accorded Vincent's belated second amended petition. We must deem it timely. *Goswami v. Metropolitan Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988).

2. In discussing those subject to investigation and suit, the CHRA uses the term "respondent". *Tex. Rev.Civ.Stat.Ann.* art. 5221k, §§ 6.01(a) & 7.01(a). "Respondent", means "person". *Id.* at

### WRONGFUL DISCHARGE AND THE TORT CLAIMS ACT

In points of error two and three, Vincent protests the trial court's decision to dismiss, for lack of jurisdiction, those portions of the suit invoking the Tort Claims Act (the Act) and "wrongful discharge". In doing so, it purportedly violated her due process rights. Through point four the Appellant objects to summary judgment since the Act allegedly negated the Appellees' sovereign immunity. We again disagree and overrule each point.

### a. Claims against WTS and the Employees in Their Official Capacities

To the extent that Vincent sued WTS and the Employees in their official capacities, she sued the State of Texas. *Tyrell v. Mays,* 885 S.W.2d 495, 499 (Tex.App.—El Paso 1994, writ dism'd); *Alcorn v. Vaksman,* 877 S.W.2d 390, 403 (Tex.App.—Houston [1st Dist.] 1994, no writ). That implicated the doctrine of sovereign immunity which deprived the court of subject-matter jurisdiction. *State v. Lain,* 162 Tex. 549, 349 S.W.2d 579, 582 (1961). Thus, dismissal was mandatory unless Vincent could show that the state somehow waived the bar. *Id.; Pickell v. Brooks,* 846 S.W.2d 421, 424–25 (Tex.App.—Austin 1992, writ denied). She attempted to do so by invoking the Tort Claims Act.

■ The Act constitutes a limited waiver of sovereign immunity. To invoke it, though, the injury complained of must relate to or be caused by a "condition or use of tangible personal property or real property." *Tex. Civ.Prac. & Rem.Code Ann.* § 101.021(2). Furthermore, only those items having a "corporeal, concrete, and palpable existence" are considered tangible. *University of Texas Med. Branch v. York,* 871 S.W.2d 175, 178 (Tex.1994). Thus, it was incumbent upon Vincent to illustrate how a condition or use of tangible property injured her.[3]

§ 6.01(a). And, "person" includes the State and agencies of the State. *Id.* at § 2.01(11). Thus, WTS was a "respondent" potentially culpable for sexual harassment.

3. To require Vincent to allege in her petition facts satisfying the Tort Claims Act is quite appropriate. The Act vests the court with subject-matter jurisdiction, and it was her burden to aver

■ The tangible items at bar, according to the Appellant, were WTS' student newspaper and a job discrepancy form. With regard to the newspaper, she purportedly suffered embarrassment and stress from an article describing the harassment inflicted upon her by her co-workers. With regard to the job form, it allegedly injured her by incorporating false information.

Had either paper item come in physical contact with her body in a manner resulting in injury, then Vincent would have stood on firm ground. Yet, the item which actually injured her, assuming injury resulted, was not the physical documents but the information printed on them. Furthermore, information is intangible; it lacks the "corporeal, concrete, and palpable" existence required by the Act. *University of Texas Med. Branch v. York,* 871 S.W.2d at 178–79; *Washington v. City of Houston,* 874 S.W.2d 791, 795–96 (Tex.App.—Texarkana 1994, no writ). That someone may affix the information on to a tangible item, such as a record, does not by trick of alchemy render it corporeal. *Id.* Thus, and as a matter of law, neither the WTS newspaper article nor the discrepancy form satisfied the Act's prerequisites. The wall of sovereign immunity stood.

To the extent that Vincent may now alternatively argue that the Commission on Human Rights Act (CHRA) waived the immunity as described above, relief, nevertheless, would remain unavailable. She did not satisfy the statute's administrative perquisites.

The CHRA, *Tex.Rev.Civ.Stat.Ann.* art. 5221k, § 1.01 (Vernon 1987), *recodified, Tex.Labor Code Ann.* § 21.001 (Vernon Pamp.1995), proscribes various types of discriminatory practices.[4] The type pertinent here concerns sexual discrimination. *Tex.Labor Code Ann.* § 21.051(1). Within its prenumbra lies sexual harassment. *Ewald v.*

*Wornick Family Foods Corp.,* 878 S.W.2d 653, 658 (Tex.App.—Corpus Christi 1994, writ denied) (defining sexual harassment as discrimination for purposes of the Act); *Syndex Corp. v. Dean,* 820 S.W.2d 869, 870–71 (Tex.App.—Austin 1991, writ denied) (holding that sexual harassment is universally accepted as unlawful employment discrimination). Thus, employees victimized by sexual harassment have a viable, statutory cause of action against private and governmental employers.

■ Nonetheless, before the grievant may sue for redress, he must tender his complaint with the Commission on Human Rights (Commission) within 180 days of the suspected misconduct. *Tex.Labor Code Ann.* §§ 21.201(a) & 21.202(a); *Schroeder v, Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex. 1991). This affords the Commission opportunity to investigate the allegation, informally eliminate any discrimination, and minimize costly litigation. *Id.* at §§ 21.203, 21.204(a) & 21.207(a); *Stinnett v. Williamson County Sheriff's Dept.,* 858 S.W.2d 573, 577 (Tex. App.—Austin 1993, writ denied). Indeed, the requirement is of such import that failing to comply with it deprives the court of subject-matter jurisdiction. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d at 485–89. In other words, unless and until an employee timely submits his grievance to the Commission, the courts of Texas are barred from adjudicating it. *Id.; Stinnett v. Williamson County Sheriff's Dept.,* 858 S.W.2d at 576; *Ridgway's Inc. v. Payne,* 853 S.W.2d 659, 663 (Tex.App.—Houston [14th Dist.] 1993, no writ).

■ Additionally, one cannot avoid the exhaustion prerequisite by pursuing the claims under some related theory. *Stinnett v. Williamson County Sheriff's Dept., supra.* The

---

the presence of such jurisdiction via the face of the petition. *Green Int'l Inc. v. State,* 877 S.W.2d 428, 437 (Tex.App.—Austin 1994, no writ); *Liberty Mutl. Ins. Co. v. Sharp,* 874 S.W.2d 736, 739 (Tex.App.—Austin 1994, writ denied); *Texas Ass'n Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). Alternatively, the Appellants expressly asserted in their motion for summary judgment that she could not prove the elements of the Act. As will be shown below, the factual allegations in the second amended peti-

tion, were indeed deficient to establish each element of the Act.

4. In 1993, article 5221k, § 1.01 *et seq.* of the Texas Revised Civil Statutes was recodified in § 21.001 *et seq.* of the Texas Labor Code. However, because the incidents here pertinent arose in 1991 and because the acts are for all practical purposes identical, we cite to the original statute rather than the Labor Code.

*Stinnett* case involved an employee who complained of age discrimination and retaliation for reporting same. Though he initially filed his complaint with the Commission, he later sued under the "Whistle Blower Act," *Tex. Rev.Civ.Stat.Ann.* art. 6252–16a, now *Tex. Gov.Code Ann.* § 554.001 *et seq.* (Vernon 1994). His ex-employer protested, contending that the CHRA afforded the exclusive means of redress. The appellate court agreed. *Stinnett v. Williamson County Sheriff's Dept.*, 858 S.W.2d at 576–77. It compared the two acts and their underlying purposes; both were concerned with unlawful retaliation in the workplace. Then it considered the purpose underlying the extensive administrative scheme created by the CHRA. Upon completing this process, it concluded that denying the CHRA preemptive status undermined the "policy of Title VII to use administrative procedures to promote conciliation and persuasion rather than litigation." *Id.* at 577. "Just as this goal is promoted by requiring exhaustion ... it is furthered by placing the exclusive forum for resolution of violations of the Human Rights Act in the Commission." *Id.* Accordingly, the CHRA subsumed recovery under the Whistle Blowers Act when the activity complained of entailed conduct prohibited by the CHRA.

Here, Vincent admitted that she did not submit her grievance to either the Commission or its federal cousin the Equal Employment Opportunity Commission (EEOC). More importantly, the window granted her to do so closed long ago. Thus, the immunity piercing remedies provided by the CHRA were lost.

■ We do not agree with Vincent's suggestion that by tendering the complaint to the WTS president she exhausted her administrative remedies. The CHRA states that the reports may be submitted to the "Commission". *Tex.Rev.Civ.Stat.Ann.* art. 5221k, § 6.01(a). The commission referred to is the Commission on Human Rights. *Id.* at § 2.201(2). That statutorily created body has the duty to investigate, conciliate, and litigate acts of discrimination. *Id.* at §§ 6.01 & 7.01. Save for the EEOC, the only other entity allowed to perform these functions are "local commissions." *Id.* at § 4.01 *et seq.* Yet, only "political subdivisions" comprise such commissions, and only counties and incorporated cities and towns comprise such subdivisions. *Id.* at §§ 2.01(9) & (13). Neither universities, their presidents, nor their administrative personnel are encompassed by the definitions. Ignoring that fact and adopting Vincent's position amounts to eviscerating the comprehensive administrative scheme established by the CHRA, a result which this court will not condone.

Having failed to vest the trial court with jurisdiction or to create a material issue of fact concerning the application of the Tort Claims Act, Vincent's allegations against WTS and the Employees in their "official" capacity had to be dismissed. Moreover, in so dismissing them, the trial court denied no one due process. *Gay v. State*, 730 S.W.2d 154, 158 (Tex.App.—Amarillo 1987, no writ).

### b. Suit Against the Employees in Their Individual Capacities

■ To the extent that Vincent sued the Employees in their "individual" or "personal" capacities, sovereign immunity is not an obstacle.[5] However, other matters are. For instance, in failing to exhaust her administrative remedies, she denied the court jurisdiction to assess liability against the Employees for sexual harassment in any capacity. The omission also barred her "wrongful discharge" claim. Specifically, the latter involved retaliation for her reporting sexually harassing activity. The CHRA proscribes such retaliation and, in doing so, preempts suit under related theories. *Stinnett v. Williamson County Sheriff's Dept., supra.* Thus, any attempt to redress the supposedly

---

5. The Appellees understood the likelihood that Vincent's suit could involve the individual defendants in both their official and personal capacities. Indeed, they specially excepted to the pleading defects regarding capacity and expressly asserted the affirmative defense of quasi-judicial/qualified immunity. The latter had no application save to defend against "personal" capacity liability. Under these circumstances, and given the liberality of current pleading requirements, the court may assume that Vincent sued the Employees in both capacities. *See e.g. Kolar v. Sangamon*, 756 F.2d 564, 568 (7th Cir.1985).

wrongful termination had to comport with administrative requirements of the CHRA.

■ Next, *City of Beaumont v. Bouillion,* 896 S.W.2d 143 (Tex.1995) pretermits Vincent's monetary recovery for the purported violations of article I, sections 3a and 8 of the Texas Constitution. There the Supreme Court eschewed the opportunity to create private rights of action for constitutional torts involving the Texas Constitution. *Id.* at 147. Though only article I, § 8 of the Constitution was involved, the court's reasoning is equally applicable to damage actions under article I, § 3a. In either case, the provision grants no private right of action for damages.[6]

## 42 U.S.C. § 1983

In her last point of error, Vincent states that because the case "evolved into ... complaints of misconduct and professional abuse ... by Appellee's agents who acted under the apparent authority granted them as [S]tate employees ... [s]uch conduct may be construed by a fact finder as violations of 42 U.S.C. § 1983 if tried." We again disagree and overrule the point.

First, as noted by Appellees during oral argument, the point lacks case citation and substantive development. That alone provides ample basis to reject it.

Second, Vincent's live pleading mentions nothing of 42 U.S.C. § 1983. Nor does it cite any federal statute, federal common law or federal constitutional right which was violated. The only references to constitutional infringement concerned article 1, §§ 3a and 8 of the Texas Constitution, and a § 1983 suit cannot be founded upon violation of state law by state actors.

Accordingly, we affirm the summary judgment and order dismissing for lack of jurisdiction.

---

**6.** The motion for summary judgment did not expressly address the two constitution arguments because neither were alleged at the time. It could be argued that this precludes any effort to consider them as encompassed by the summary judgment, which, in turn, would warrant remand of the two issues to the trial court for disposition. Yet, under *Bouillion* the trial judge would be compelled to deny the claims. Rather than prolong this inevitable result, we dispense with them on appeal and thereby avoid "judicial wheel-spinning".