COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-138-CV

CHARLENE COOPER-DAY                                                       APPELLANT 
 
V.
 
RME PETROLEUM CO., THE SUCCESSOR                                    APPELLEE 
IN INTEREST OF UNION PACIFIC 
RESOURCES COMPANY A/K/A UNION 
PACIFIC RESOURCES GROUP, INC. 

------------
 
FROM THE 
96TH DISTRICT COURT OF TARRANT COUNTY 
 
------------
 
OPINION
 
------------
 
I. Introduction
        Charlene Cooper-Day (“Cooper-Day”) appeals the summary judgment 
rendered against her on her gender discrimination claims for constructive 
discharge and unequal pay. The primary issue we address in this appeal is 
whether Cooper-Day timely filed her administrative complaint as mandated by 
Texas Labor Code section 21.202. Tex. Lab. Code Ann. § 21.202 (Vernon 
1996). We hold that Cooper-Day’s constructive discharge and unequal pay 
claims are jurisdictionally barred because they were not administratively filed 
within 180 days of the date the alleged unlawful employment practices 
occurred. Therefore, we will affirm the trial court’s summary judgment. 
II. Factual and Procedural Background
        In July 1990, Cooper-Day applied for and received a land analyst position 
at Union Pacific Resources Company (“UPR”) 


 with a salary of $39,500. In her 
position as a land analyst, she assisted landmen, provided administrative 
support, and negotiated simple right-of-way leases and surface-owner 
agreements.
        After several years as a land analyst, Cooper-Day was promoted to senior 
land analyst with a salary of $48,000, and in the fall of 1996, she was 
promoted to the position of Landman IV and given a salary of $60,000. 
Although Cooper-Day had not negotiated complex deals and contracts such as 
farm-in agreements, farm-out agreements, joint venture agreements, acquisition 
agreements, gas balancing agreements, joint operating agreements, and federal 
exploratory unit agreements, she was placed in the middle of the landman 
hierarchy based on her experience, skill set, work ethic, and people skills. After 
Cooper-Day was promoted to landman and was placed in charge of the 
Overthrust region, she continued to perform the job responsibilities of her prior 
position because her unit was under-staffed. Additionally, she was given 
responsibility for the Moxa Arch region when the person in charge of that 
region was transferred. Consequently, Cooper-Day was the only landman who 
was responsible for two significant geographic regions. 
        In April 1997, about seven months after her promotion to landman, 
Cooper-Day received a raise that increased her salary to $61,950. A year later, 
she received another raise, which made her salary $68,100. Along with that 
raise, she was offered a $3,098 incentive bonus and a $10,000 retention 
bonus, provided she would stay with UPR until April 1, 1999. 
        On or about May 14, 1998, Cooper-Day decided to resign because one 
of her deals had fallen through; she had endured a long day at work; she had 
been working hard for a six-month period; she did not believe she would ever 
make as much money as the other landmen; and she had medical problems. 
That night, Cooper-Day told her husband, Marshall Day (“Day”), of her decision 
to resign. She asked Day to call Chris Cirone (“Cirone”), who was a family 
friend and a land manager at UPR, and arrange a breakfast meeting for the next 
day. At the breakfast meeting on May 15, 1998, Day explained that Cooper-Day had decided on May 14, 1998, to resign from UPR. Cirone asked Day to 
have Cooper-Day reconsider her decision, but Day said that Cooper-Day would 
not change her mind. Cooper-Day did not return to work after May 14, 1998, 
and she never sent or delivered a resignation letter to UPR. 
        Cirone did not inform UPR of Cooper-Day’s decision on the day of the 
breakfast meeting because Cooper-Day was already scheduled to be out of the 
office at an office-sponsored golf tournament. On May 17, 1998, Cooper-Day 
and her husband invited Cirone over for dinner, and Cooper-Day herself 
informed Cirone that her time off had only strengthened her decision not to 
return to work. On Monday, May 18, 1998, Cirone informed Bill Lanier, an 
employee in UPR’s People Department, of Cooper-Day’s decision to resign. 
Thus, UPR internally documented May 18, 1998, as Cooper-Day’s resignation 
date. After Cooper-Day resigned, UPR’s president took her to lunch and begged 
her to come back to work, and her boss, Ms. Dussing, called her to discuss her 
resignation. 
        On November 16, 1998, Cooper-Day filed a complaint with the Texas 
Commission on Human Rights and the Equal Employment Opportunity 
Commission (“EEOC”), asserting that UPR had discriminated against her based 
on her gender. Cooper-Day later sued UPR in district court, alleging gender 
discrimination. UPR filed a motion for summary judgment or in the alternative, 
plea to the jurisdiction. After a hearing, the trial court granted UPR’s motion. 
This appeal followed. 
III. Standard of Review
        In a summary judgment case, the issue on appeal is whether the movant 
met its summary judgment burden by establishing that no genuine issue of 
material fact exists and that the movant is entitled to judgment as a matter of 
law. Tex. R. Civ. P. 166a(c); S.W. Elec. Power Co. v. Grant, 73 S.W.3d 211, 
215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 
678 (Tex. 1979). The burden of proof is on the movant, and all doubts about 
the existence of a genuine issue of material fact are resolved against the 
movant. S.W. Elec. Power Co., 73 S.W.3d at 215; Rhone-Poulenc, Inc. v. 
Steel, 997 S.W.2d 217, 223 (Tex. 1999); Great Am. Reserve Ins. Co. v. San 
Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we 
must view the evidence and its reasonable inferences in the light most favorable 
to the nonmovant. Great Am., 391 S.W.2d at 47. 
        In deciding whether there is a material fact issue precluding summary 
judgment, all conflicts in the evidence are disregarded and the evidence 
favorable to the nonmovant is accepted as true. Rhone-Poulenc, 997 S.W.2d 
at 223; Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 
1995). Evidence that favors the movant's position will not be considered 
unless it is uncontroverted. Great Am., 391 S.W.2d at 47. The summary 
judgment will be affirmed only if the record establishes that the movant has 
conclusively proved all essential elements of the movant's cause of action or 
defense as a matter of law. Clear Creek Basin, 589 S.W.2d at 678. 
        A defendant is entitled to summary judgment on an affirmative defense 
if the defendant conclusively proves all the elements of the affirmative defense. 
KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 
748 (Tex. 1999). To accomplish this, the defendant-movant must present 
summary judgment evidence that establishes each element of the affirmative 
defense as a matter of law. Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 
(Tex. 1996). 
IV. Jurisdictional Bar to Gender Discrimination Claims
        In her first two points, Cooper-Day contends that the trial court had 
jurisdiction over her claims for constructive discharge and pay discrimination 
because: (1) she filed her complaint within 180 days of her last official day of 
employment with UPR (e.g., the date UPR shows for her resignation—May 18, 
1998); (2) her constructive discharge claim involved continuing discrimination 
so that she simply had to show a series of related acts, one of which occurred 
within 180 days of her administrative complaint; and (3) her pay discrimination 
claim was timely in any event because she received her last paycheck within 
180 days of her claim. UPR responds that because Cooper-Day decided to 
resign on May 14, 1998, and communicated that decision to UPR on May 15, 
1998, she had only until November 11, 1998—180 days from May 15, 
1998—to file her administrative discrimination complaint. Because Cooper-Day 
did not file her administrative complaint until November 16, 1998, UPR 
contends that the trial court lacked jurisdiction over both her constructive 
discharge claim and her pay discrimination claim. We address these issues in 
turn.
A. Administrative Complaint Not Filed Within 180-Day Limitations Period
        Texas law requires that a complaint of unlawful employment practices be 
filed with the EEOC or the Texas Commission on Human Rights within 180 days 
after the alleged unlawful employment practice occurred. Specialty Retailers, 
Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996); see Tex. Lab. Code 
Ann. § 21.202. This time limit is mandatory and jurisdictional. Schroeder v. 
Tex. Iron Works, Inc., 813 S.W.2d 483, 486 (Tex. 1991). Failure to timely file 
an administrative complaint deprives Texas trial courts of subject-matter 
jurisdiction. Czerwinski v. Univ. of Tex. Health Science Ctr., No. 14-02-00230-CV, slip op. at 5, 2002 WL 31718637, at *3 (Tex. App.—Houston [14th Dist.] 
Dec. 5, 2002, pet. denied); Vincent v. W. Tex. State Univ., 895 S.W.2d 469, 
473 (Tex. App.—Amarillo 1995, no writ). 
        The 180 day limitations period for an employment discrimination 
complaint begins when the employee is informed of the allegedly discriminatory 
employment decision, not when that decision comes to fruition. Specialty 
Retailers, 933 S.W.2d at 493. The fact that the employee might have felt the 
effects of the discriminatory treatment later or that the damage may continue 
to occur for an extended period of time after the discriminatory treatment does 
not extend the commencement of limitations. Id. Thus, the 180-day limitations 
period for an employment discrimination complaint commences on the date the 
alleged unlawful employment practices occurred. See Tex. Lab. Code Ann. § 
21.202; Speciality Retailers, 933 S.W.2d at 492-93. 
        Constructive discharge occurs when an employer makes working 
conditions so intolerable that an employee reasonably feels compelled to resign. 
Wal-Mart Stores, Inc. v. Bertrand, 37 S.W.3d 1, 8 (Tex. App.—Tyler 2000, pet. 
denied); Green v. Indus. Specialty Contractors, Inc., 1 S.W.3d 126, 134 (Tex. 
App.—Houston [1st Dist.] 1999, no pet.). Pay discrimination occurs when the 
employee is informed of the allegedly discriminatory pay. See Haliburton v. City 
of San Antonio, 974 S.W.2d 779, 782 (Tex. App.—San Antonio 1998, no 
pet.). Pay discrimination does not continue to occur until the last allegedly 
discriminatory paycheck is received unless the employer has implemented a 
facially invalid payment system and continues to pay under that system or the 
unequal pay is part of, or a repetition of, a past employment violation. See id. 
at 783. Thus, Cooper-Day was required to file her administrative complaint 
within 180 days of the date on which the alleged intolerable working conditions 
and unequal pay occurred. 
        Cooper-Day contends that she timely filed her constructive discharge 
administrative complaint because the intolerable working conditions that forced 
her constructive discharge, including being assigned an additional territory and 
having inadequate support staff, existed for almost eighteen months. UPR 
counters that Cooper-Day’s own testimony that the allegedly intolerable 
working conditions occurred for almost eighteen months before she resigned 
proves that the conditions occurred more than 180 days before she filed her 
administrative constructive discharge complaint. UPR therefore contends that 
Cooper-Day’s 180-day time period for purposes of her constructive discharge 
claim began to run, at the latest, on the last day she could have been subject 
to discrimination, her last day of work—May 14, 1998—requiring her 
administrative complaint to be filed by November 11, 1998. 
        In response to this argument by UPR, Cooper-Day argues that a genuine 
issue of material fact exists concerning the date she resigned, i.e., the date of 
her constructive discharge, and concerning the date she was last subjected to 
the alleged discriminatory conduct. She contends that Cirone refused to accept 
her resignation at the May 15, 1998 breakfast meeting and that, therefore, the 
resignation was not effective on that date. This argument, however, is contrary 
to controlling law: 
Resignation from a corporate position is not required to be in
writing, nor is it required to be in any special form, and it takes
effect immediately from the time notice of the resignation is given,
unless a subsequent date is named, by the one resigning. A
resignation does not require an acceptance unless it is tendered to
take effect on acceptance.

Bell v. Tex. Employers’ Ins. Ass’n, 43 S.W.2d 290, 293 (Tex. Civ. App.—Dallas
1931, writ dism’d). Here, Cooper-Day provided no effective date of
resignation, so her resignation was effective immediately, whether or not Cirone
wanted to accept it. See id.
        Cirone’s failure to communicate Cooper-Day’s resignation to UPR until 
May 18, 1998, and UPR’s internal documents listing May 18, 1998, as the date 
of Cooper-Day’s resignation do not raise a genuine issue of material fact 
concerning the date on which Cooper-Day’s statutory 180-day time period 
began to run for purposes of her constructive discharge complaint. Cirone was 
acting as UPR’s representative when he received her resignation. 


 Cooper-Day 
did not return to work after notifying Cirone of her resignation, did not send a 
resignation letter to UPR, and took no steps to inform other UPR representatives 
of her resignation. Cirone, in his official capacity as UPR’s agent, received 
Cooper-Day’s resignation, and notice to him served as notice to UPR. 
        Thus, the summary judgment evidence conclusively establishes that 
Cooper-Day’s resignation was effective on May 15, 1998, when it was 
conveyed to UPR’s representative, Cirone. The summary judgment evidence 
likewise conclusively establishes that Cooper-Day decided to resign on or before 
May 14, 1998, based on her work experiences prior to that date. Accordingly, 
Cooper-Day’s administrative complaint, filed on November 16, 1998, was not 
filed within 180 days of UPR’s date on which the alleged unlawful 
discrimination occurred. Accord Davila v. Lockwood, 933 S.W.2d 628, 630 
(Tex. App.—Corpus Christi 1996, no writ) (recognizing constructive discharge 
occurs, at the latest, on date employee gives notice of resignation); Stroud v. 
VBFSB Holding Corp., 917 S.W.2d 75, 79-81 (Tex. App.—San Antonio 1996, 
writ denied) (same). Therefore, Cooper-Day’s administrative complaint 
concerning her alleged constructive discharge was not timely filed. See 
Czerwinski, slip op. at 5, 2002 WL 31718637, at *3; Vincent, 895 S.W.2d at 
473.
        We cannot agree with Cooper-Day’s position that her administrative 
complaint was timely filed within 180 days of the date that UPR placed in its 
files as her resignation date. The resignation date UPR placed in its files is not 
controlling; Cooper-Day was aware of the intolerable working conditions 
causing her alleged constructive discharge, at the latest, on the date Day 
tendered her resignation to Cirone, and she had 180 days from that date to file 
her administrative complaint. See Tex. Lab. Code Ann. § 21.202; Specialty 
Retailers, 933 S.W.2d at 493; Davila, 933 S.W.2d at 630; Stroud, 917 S.W.2d 
at 79-81. 
        Concerning her discriminatory pay claim, Cooper-Day contends that when 
UPR gave her pay raises in 1996, 1997, and 1998, she believed UPR 
discriminated against her based on her gender by paying her less than her male 
counterparts. Comparing her salary to that of several landmen who had more 
experience than she, Cooper-Day asserts that she received a lower base pay 
than her male counterparts. As noted above, the 180-day limitations period 
begins to run when an employee is informed of the allegedly discriminatory 
employment decision, not when that decision comes to fruition. Specialty 
Retailers, 933 S.W.2d at 492-93; see also Delaware State College v. Ricks, 
449 U.S. 250, 257-58, 101 S. Ct. 498, 503-504 (1980) (holding that the 
denial of tenure constituted alleged discriminatory employment decision; actual 
termination of employment approximately one year later was merely delayed but 
inevitable consequence tenure denial). Here, Cooper-Day complains of UPR’s 
decisions regarding her pay rate; Cooper-Day had notice of those decisions 
more than 180 days before she filed her administrative discrimination 
complaint, and her paychecks were merely the inevitable consequence of UPR’s 
pay rate decisions in 1996, 1997, and 1998. See Specialty Retailers, 933 
S.W.2d at 492-93. Thus, Cooper-Day’s discriminatory pay claims accrued each 
time she was informed that she was receiving a raise, albeit a raise she did not 
consider equal to those given to men. Consequently, Cooper-Day’s 
administrative filing on November 16, 1998, more than 180 days after her last 
pay raise, was not timely. 
B. No Continuing Violation Theory Applies to Cooper-Day’s Claims
        1. Constructive Discharge Complaint 
        Cooper-Day nonetheless argues that the trial court possesses jurisdiction 
over her constructive discharge and discriminatory pay causes of action 
pursuant to National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 
117-18, 122 S. Ct. 2061, 2074-75 (2002). With regard to her constructive 
discharge theory, she contends that under Morgan the trial court may consider 
the entirety of UPR’s relationship with and treatment of her if a single event 
supporting the alleged intolerable environment and causing constructive 
discharge occurred within 180 days of the filing of her administrative complaint. 
Morgan, however, involved a hostile work environment, which by nature is a 
continuing violation that, under federal law, may toll the limitations period. 536 
U.S. at 103, 122 S. Ct. at 2066-67. Cooper-Day contends, for the first time 
on appeal, that a hostile work environment at UPR, created by unequal pay, 
triggered her constructive discharge. This argument is waived because it was 
not raised in the trial court. Tex. R. App. P. 33.1(a). Further, discrimination in 
the form of unequal pay, alone, is not sufficient to support a claim for 
constructive discharge. Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 
F.2d 1071, 1077 (5th Cir. 1981). Thus, Cooper-Day’s constructive discharge 
claim does not fall within the parameters of Morgan. 
        Cooper-Day also relies on Huckabay v. Moore for the proposition that 
long-term discrimination in the working environment, such as discrimination 
leading to a constructive discharge, is considered a continuing tort. 


 142 F.3d 
233, 238 (5th Cir. 1998). Regarding the continuing violation theory, the Fifth 
Circuit in Huckabay explained: 
The continuing violation theory relieves a plaintiff of
establishing that all of the complained-of conduct occurred within
the actionable period if the plaintiff can show a series of related
acts, one or more of which falls within the limitations period. . . . 
Thus, a plaintiff can avoid a limitations bar for an event that fails
to fall within the statutory period where there is a persisting and
continuing system of discriminatory practices in promotion or
transfer that produces effects that may not manifest themselves as
individually discriminatory except in cumulation over a period of
time.

Id. at 238-39. Under the Huckabay test, a plaintiff must show an organized
scheme leading to and including a present violation, so that it is the cumulative
effect of the discriminatory practice, instead of any discrete occurrence, that
gives rise to the cause of action. Id. at 239.
        Cooper-Day contends that UPR’s failure to provide her with an assistant 
and assignment of an extra region to her constitutes “an organized scheme 
leading to and including a present violation.” These two instances of alleged 
discrimination, however, are discrete acts. See, e.g., Morgan, 536 U.S. at 101, 
122 S. Ct. at 2073 (recognizing that “termination, failure to promote, denial of 
transfer, or refusal to hire” are easily identifiable as discrete acts). Cooper-Day 
presented no summary judgment evidence raising a genuine issue of material 
fact concerning her continuing violation theory. The trial court correctly granted 
summary judgment for UPR on Cooper-Day’s constructive discharge claim. 


 We 
overrule Cooper-Day’s first point. 
 
 
        2. Pay Discrimination Complaint 
        Cooper-Day also claims that her administrative pay discrimination 
complaint was timely filed because Morgan applies to that claim. 536 U.S. at 
112, 122 S. Ct. at 2071. She argues that the trial court possesses jurisdiction 
over this claim because she received her final paycheck, covering one day of 
work and her accrued vacation time, on May 29, 1998, within 180 days of the 
date she filed her administrative complaint. UPR, on the other hand, argues 
that Morgan does not apply because: (1) Cooper-Day knew of the alleged 
discriminatory pay rate decision prior to the 180-day filing deadline; (2) Cooper-Day did not plead or offer controverting summary judgment evidence 
concerning any hostile environment claim; (3) Cooper-Day failed to offer 
summary judgment evidence triggering any continuing violation theory of 
avoidance; and (4) Cooper-Day’s complaints involve discrete acts that should 
have put her on notice of the alleged discriminatory pay. 
        In order to prevail on a continuing violation theory, Cooper-Day must 
show an organized scheme leading to and including a present violation, so that 
it is the cumulative effect of the discriminatory practice, rather than any 
discrete occurrence, that gives rise to the cause of action. Huckabay, 142 F.3d 
at 239; see also Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 352 
(5th Cir. 2001) (citing Huckabay). In determining whether unlawful 
discrimination is a discrete act or a continuing violation, courts look to several 
factors:
The first is subject matter. Do the alleged acts involve the same
type of discrimination, tending to connect them in a continuing
violation? The second is frequency. Are the alleged acts recurring
. . . or more in the nature of an isolated work assignment or
employment decision? The third factor, perhaps of most
importance, is degree of permanence. Does the act have the
degree of permanence which should trigger an employee’s
awareness of and duty to assert his or her rights, or which should
indicate to the employee that the continued existence of the
adverse consequences of the act is to be expected without being
dependent on a continuing intent to discriminate.

Berry v. Bd. of Supervisors, 715 F.2d 971, 981 (5th Cir. 1983), cert. denied,
479 U.S. 868 (1986). Cooper-Day, however, fails to argue and did not plead
an organized scheme leading to and including a present violation. The
summary judgment evidence fails to show an organized scheme. Moreover, the
permanence of UPR’s pay rate decisions, made annually except when a
promotion was involved, should have triggered Cooper-Day’s awareness of and
duty to assert her rights where she believed UPR’s 1996, 1997, and 1998 pay
decisions were discriminatory. Cooper-Day’s claim that she was paid less than
her male counterparts and that Dussing admitted UPR discriminated in its pay
based upon gender are merely evidence of isolated employment decisions, or
discrete acts. See Huckabay, 142 F.3d at 239 n.3, 240 (recognizing that mere
receipt of paycheck does not constitute “continuing act” of discrimination);
Berry, 715 F.2d at 981 (same); see also United Air Lines, Inc. v. Evans, 431
U.S. 553, 558, 97 S. Ct. 1885, 1889 (1977). Cooper-Day’s May 29, 1998
paycheck was based on a pay rate decision that occurred more than 180 days
before she filed her administrative complaint. We hold that the trial court did
not err by determining that no summary judgment evidence exists supporting
application of the continuing violation theory to Cooper-Day’s pay discrimination
claim. See Celestine, 266 F.3d at 352 (refusing to apply continuing violation
theory to racial discrimination claims); Hendrix v. City of Yazoo City, 911 F.2d
1102, 1103-05 (5th Cir. 1990) (refusing to apply continuing violation theory to
pay discrimination claim when firefighters were fully aware of reduction in base
pay when they received later check); Krough v. Cessford Constr. Co., 231 F.
Supp. 2d 914, 921 (S.D. Iowa 2002) (refusing to apply continuing violation
theory to pay discrimination claim when employee was fully aware of wage
discrepancy when she accepted position). 
        UPR’s pay rate decisions constituted discrete acts, Cooper-Day knew of 
these allegedly discriminatory pay rate decisions more than 180 days before she 
filed her administrative complaint, and the continuing violation doctrine does not 
apply to her pay discrimination claim. Moreover, no summary judgment 
evidence exists that UPR implemented a facially invalid payment system or that 
Cooper-Day’s alleged unequal pay was part of, or a repetition of, a past 
employment violation. See Haliburton, 974 S.W.2d at 782. Therefore, we hold 
that UPR conclusively established its right to summary judgment on Cooper-Day’s pay discrimination claim based on her failure to file her administrative 
complaint within 180 days of May 15, 1998, i.e., by November 11, 1998. We 
overrule Cooper-Day’s second point. 
V. Conclusion
        Having determined that the trial court properly granted summary 
judgment for UPR based on her failure to file her administrative complaint within 
the statutory 180-day period, and having overruled Cooper-Day’s first and 
second points, we affirm the trial court’s judgment. In light of this disposition, 
we need not address Cooper-Day’s third, fourth, or fifth points. See Tex. R. 
App. P. 47.1.
 
                                                          SUE WALKER 
                                                          JUSTICE
 
PANEL B: CAYCE, C.J.; HOLMAN and WALKER, JJ.
 
DELIVERED: September 18, 2003