**EQUISOURCE REALTY CORPORATION,**
Appellant,

v.

**CROWN LIFE INSURANCE COMPANY, Appellee.**

**No. 05–92–01144–CV.**

Court of Appeals of Texas, Dallas.

April 19, 1993.

John H. Carney, Dallas, for appellant.

David Hicks, Dallas, for appellee.

Before LAGARDE, MALONEY and MORRIS, JJ.

## OPINION

LAGARDE, Justice.

Equisource Realty Corporation appeals the summary judgment entered for Crown Life Insurance Company in the amount of $45,000 plus attorney's fees. Equisource brings three points of error contending that (a) the trial court erred in entering summary judgment for Crown because there are genuine issues of material fact and because Crown failed to establish its entitlement to summary judgment as a matter of law; and (b) the trial court erred in entering declaratory judgment for Crown because this cause of action is not appropriate for declaratory judgment. We sustain Equisource's first point in part and overrule the other points. We reverse the trial court's judgment insofar as it relates to Crown's claim for "wrongful notice of lis pendens/slander of title" and remand that cause of action to the trial court. We affirm the trial court's judgment in all other respects.

### FACTUAL BACKGROUND

In June 1990, Equisource, as purchaser, and Crown, as seller, entered into a purchase and sale contract for an apartment complex. The contract designated Stewart Title Company as the "Title Company" in the contract and stated that Stewart Title was to hold the earnest money deposited by Equisource. The contract did not contain a separate escrow agreement. Pursuant to the contract, Equisource deposited "initial earnest money" of $25,000 with Stewart Title.

The contract provided that Equisource would have an inspection period expiring on July 20, at the end of which if Equisource wanted to continue under the contract, it had to deposit $25,000 "additional earnest money" with Stewart Title. If Equisource chose to terminate the contract, then it had to send notice of termination to Crown, and Stewart would refund the initial earnest money to it. If the inspection period expired before Equisource deposited the additional earnest money with Stewart Title or sent notice of termination to Crown, then the contract would be terminated, and Equisource would forfeit the initial earnest money to Crown.

On July 19, Equisource notified Crown by certified letter that it was terminating the contract. On July 20, Equisource and Crown agreed to an extension of the inspection period to August 10. The extension required Equisource to deposit an additional $20,000 as initial earnest money, bringing the total initial earnest money to $45,000. Equisource deposited the extra initial earnest money, and the parties treated the contract as still continuing. On August 10, Equisource, through its attorney in fact, notified Stewart Title, not Crown, of its intention to terminate the contract. Stewart Title then tried to send notice of the termination to Crown by telecopier but was unable to successfully send the notice. Neither Stewart Title nor Equisource mailed a copy of the notice to Crown or sent the notice by any other means set out in the contract for sending notice. On August 13, Crown's attorneys sent a letter to Equisource stating that Equisource had failed to either timely notify Crown of its election to terminate the contract or to deposit the additional earnest money and had thus forfeited the initial earnest money to Crown as liquidated damages.

### THE PLEADINGS

The record shows that Equisource sued Crown and Stewart Title for breach of contract. Equisource also sued Stewart Title for breach of fiduciary duty, negligence,

and violations of the Texas Deceptive Trade Practices–Consumer Protection Act and alleged that Crown was liable under the doctrine of respondeat superior as Stewart Title's principal. Stewart Title interpleaded the $45,000 initial earnest money, counterclaimed against Equisource, and crossclaimed against Crown.[1] Crown counterclaimed against Equisource for declaratory judgment, breach of contract, and "wrongful notice of lis pendens/slander of title."[2] The record does not contain an answer or the pleading of any affirmative defenses by Equisource to Crown's counterclaim. Crown moved for summary judgment on its counterclaim, and the trial court granted Crown's motion, dismissed Equisource's claims against Crown, and awarded Crown the $45,000 initial earnest money, plus attorney's fees. The trial court then severed Crown's judgment from Equisource's claims against Stewart Title.

## STANDARD OF REVIEW

▬▬▬ The function of a summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact but is to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

▬▬▬ A movant must show its entitlement to summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of its cause of action or defense as a matter of law. *See Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). The trial court may not grant summary judgment by default against the nonmovant for failing to respond to the motion when the movant's summary judgment proof is legally insufficient. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

▬▬▬ A nonmovant need not answer or respond to a motion for summary judgment to contend on appeal that the grounds expressly presented by the movant's motion are insufficient as a matter of law to support summary judgment. However, the nonmovant may not raise any other issues

---

**1.** Stewart Title's pleadings and Crown and Equisource's responses to those pleadings are not in the record.

**2.** The transcript shows that Equisource originally filed its suit on October 3, 1990 and that it filed its seconded amended petition, the live pleading, on May 29, 1991. Crown filed its first amended answer on February 18, 1991, and its motion for summary judgment on July 31, 1991. The summary judgment was granted on October 11, 1991. However, the transcript also states that Crown did not file its original counterclaim until February 18, 1992, or four months and one

week after it was granted summary judgment on its counterclaim. The copy of Crown's original counterclaim in the transcript is not file-stamped with the date of filing. The certificate of service on the original counterclaim states that copies were served on the other counsel of record on February 18, 1991, the same day Crown filed its first amended answer. The parties do not explain or even mention this conflict in the dates, and Equisource does not ascribe any error to this issue. Because both parties treat the document as having been properly and timely filed before the hearing on the motion for summary judgment, we will do likewise.

as grounds for reversal. *City of Houston*, 589 S.W.2d at 678. Where the nonmovant has a crossaction pending against the movant, the nonmovant can defeat the summary judgment by presenting evidence raising a genuine issue of material fact on its crossaction. *Maddox v. Oldham Little Church Found.*, 411 S.W.2d 375, 378 (Tex. Civ.App.—Tyler 1967, writ ref'd n.r.e.).

■ Except to attack the legal sufficiency of the movant's grounds for summary judgment, the nonmovant must expressly present to the trial court any reason for avoiding the movant's entitlement to summary judgment. The nonmovant must present summary judgment proof when necessary to show a fact issue. The nonmovant must expressly present to the trial court in a written answer or response to the motion those issues that would defeat the movant's right to summary judgment and failing to do so, may not assign them on appeal as error. Tex.R.Civ.P. 166a(c); *City of Houston*, 589 S.W.2d at 678–79.

## CROWN'S ENTITLEMENT TO JUDGMENT AS A MATTER OF LAW

In its first point of error, Equisource contends that the trial court erred in entering summary judgment because Crown failed to establish that it was entitled to judgment as a matter of law. Equisource argues that (a) the affidavit of Ted Freed does not establish how he acquired personal knowledge of the facts alleged in the affidavit; (b) Freed's affidavit is insufficient to establish Crown's counterclaims or to defeat Equisource's claims; and (c) Crown's motion for summary judgment fails to address its claim for wrongful notice of lis pendens/slander of title.

### A. Freed's Personal Knowledge

■ Equisource argues that the affidavit of Ted Freed was improper summary judgment evidence by Crown because the affidavit failed to establish how Freed acquired personal knowledge of the facts in the affidavit. In the affidavit, Freed stated:

1. "My name is Ted Freed. I am over the age of twenty-one years, of sound mind, and competent to testify. All of the matters stated herein are within my personal knowledge, and are true and correct.

2. "I am the Director of Property Dispositions for Crown Life Insurance Company, and have held that position since April, 1990."

This Court faced a similar situation in *Jackson T. Fulgham Co. v. Stewart Title Guaranty Co.*, 649 S.W.2d 128 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). In *Jackson T. Fulgham Co.*, we held that although an affidavit must state more than that the affiant "has personal knowledge," the affidavit met the personal knowledge requirement by the affiant's stating that he was the vice president of the movant. *Jackson T. Fulgham Co.*, 649 S.W.2d at 130; *see also City of Dallas v. Continental Airlines, Inc.*, 735 S.W.2d 496, 501 (Tex.App.—Dallas 1987, writ denied) (relying on *Jackson T. Fulgham*). Likewise, Freed's position as Director of Property Dispositions for Crown is sufficient to show the origin of his personal knowledge of the facts surrounding this attempted real estate venture.

### B. Sufficiency of Summary Judgment Evidence

■ Equisource argues that Freed's affidavit is insufficient to establish Crown's entitlement to judgment as a matter of law on its counterclaims. To prove its entitlement to summary judgment on its claims for declaratory judgment and breach of contract, Crown had to prove conclusively that (1) it was entitled to the initial earnest money if it did not receive timely notice of termination from Equisource; and (2) it did not receive timely notice of termination from Equisource. Crown proved the first of these issues by introducing the contract, which established Crown's right to the initial earnest money if it did not receive Equisource's timely notice. Crown proved the second issue through Freed's affidavit, which established that Crown never received Equisource's notice of termination. Crown thus established its entitlement to

judgment on these claims against Equi-source as a matter of law.

Equisource argues that Crown is not entitled to summary judgment for breach of contract because it has not shown that it was in full compliance with the contract. The terms of the contract did not call for performance by Crown until after the end of the inspection period. If by the end of the inspection period Equisource deposited the $25,000 additional earnest money with Stewart Title, Crown would have to proceed with the sale of the property to Equisource under the terms of the contract. However, if by the end of the inspection period Equisource properly notified Crown of its intent to terminate the contract, Crown would have to notify Stewart Title to release the initial earnest money to Equisource. The contract did not require performance by Crown until after the inspection period. Because Crown did not have to perform, it fully complied with the contract as a matter of law by waiting for Equisource to default or to decide whether to proceed with the purchase of the property.

### C. Wrongful Notice of Lis Pendens/Slander of Title

■ Equisource also argues that Crown failed to establish its entitlement to summary judgment because its motion for summary judgment did not address its counterclaim for wrongful notice of lis pendens/slander of title. Summary judgment cannot be granted on a claim not addressed in the motion for summary judgment. *See Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990); *Waugh v. City of Dallas,* 814 S.W.2d 492, 496 (Tex.App.—Dallas 1991, writ denied). Thus, the trial court erred in granting summary judgment

on this claim. Accordingly, we sustain the first point of error insofar as it applies to Crown's claim for wrongful notice of lis pendens/slander of title. In all other respects, we overrule the first point of error.

### AGENCY OF STEWART TITLE

■ When Crown established its entitlement to summary judgment on its counterclaim, the burden shifted to Equisource to bring summary judgment evidence raising a genuine issue of material fact as to Crown's counterclaims or as to its claims against Crown. *See Maddox,* 411 S.W.2d at 378. In its second point of error, Equisource contends that the trial court erred in entering summary judgment for Crown because genuine issues of material fact remain undecided. Specifically, Equisource argues that a fact issue exists on whether Stewart Title was the agent of Crown for receiving notice of termination under the contract.[3]

Equisource argues that the general provisions of the law of agency should apply to escrow agents. It points out that notice to an agent is deemed notice to the principal. *Williams v. Jennings,* 755 S.W.2d 874, 883 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Equisource notes that cases have stated that an escrow agent is an agent for both buyer and seller. *See Campbell v. Barber,* 272 S.W.2d 750, 753 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). Equisource then concludes that its notice of termination delivered to Stewart Title should be deemed notice to Crown because Stewart Title, as escrow agent, was Crown's agent.

■ Equisource's arguments notwithstanding, the "hornbook law" of agency is not necessarily applicable to escrow agents. Although sharing the name

---

**3.** Because the record does not show that Equisource filed an answer to Crown's counterclaims, we deem Equisource to have pleaded only a general denial to the counterclaims. *See* Tex.R.Civ.P. 92. Equisource still had to plead affirmative defenses to Crown's counterclaims to be able to assert those defenses. *See* Tex. R.Civ.P. 92, 94. Agency is an affirmative defense. *See Glendon Invs., Inc. v. Brooks,* 748 S.W.2d 465, 467 (Tex.App.—Houston [1st Dist.]

1988, writ denied). Because Equisource's petition alleges that Stewart Title was Crown's agent for service of notice, Equisource could defeat the summary judgment by presenting summary judgment evidence raising a fact question on that issue. *Maddox,* 411 S.W.2d at 378. Accordingly, we need not reach the issue of whether Equisource waived the issue of Stewart Title's agency as to Crown's counterclaims.

"agent," general agents and escrow agents are dissimilar in one important respect: a general agent is forbidden from having conflicting interests, but an escrow agent necessarily serves two conflicting principals. For this reason, a general agent of one of the parties is ordinarily considered ineligible to be an escrow agent. *See Johnson v. Freytag*, 338 S.W.2d 257, 262 (Tex.Civ.App.—Beaumont 1960, writ ref'd n.r.e.); *Pickle v. Whitaker*, 224 S.W.2d 741, 745 (Tex.Civ.App.—El Paso 1949, writ ref'd). The escrow agent owes fiduciary duties to buyer and seller, but these duties are strictly limited to its role as escrow agent. *See Boatright v. Texas Am. Title Co.*, 790 S.W.2d 722, 728 (Tex.App.—El Paso 1990, writ dism'd). The scope of the agency to both parties is defined by the escrow agreement. *See* 30A C.J.S. *Escrows* § 10 (1992); *cf. Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 786 (Tex.App.—Dallas 1990) ("In the escrow situation, it is most important to include a carefully drawn list of instructions that defines the duties of the escrow agents."), *writ denied per curiam*, 803 S.W.2d 265 (Tex.1991). A party can appoint the escrow agent to receive notice for it. *Cf. Campbell*, 272 S.W.2d at 752 (where contract providing seller was to send abstract and deed to buyer, in care of bank, and buyer was to have five days after receipt of abstract to pay purchase price, court held buyer received the abstract when abstract arrived at the bank, not when buyer arrived at bank to pick up abstract). An escrow agent, however, is not presumed to be an agent for receipt of notice for all purposes. *See King v. Ladd*, 624 S.W.2d 195, 197 (Tex.Civ.App.—El Paso 1981, no writ).

In this case, the contract expressly provided for certain items and notices to be delivered to Stewart Title and for other notices to be delivered to the parties themselves. The part of the contract dealing with Equisource's right to terminate states:

> If Purchaser, in its sole and absolute discretion, finds the Property is not suitable for its purposes, Purchaser may terminate this Agreement by giving written notice of termination to Seller no later than the last day of the inspection Period....

The contract sets out various means by which notice could be given:

> Any notice provided or permitted to be given under this Agreement must be in writing and may be served by (i) depositing same in the United States mail, addressed to the party to be notified, postage prepaid and registered or certified with return receipt requested; (ii) by delivering the same in person to such party; (iii) by prepaid telegram or telex; or (iv) by telecopier.... For purposes of notice, the addresses and telecopy numbers of purchaser are as set forth opposite Purchaser's signature below and the addresses and telecopy numbers of seller are as follows:....

The contract then lists Crown's address and telecopier number as well as those of persons Crown wanted to receive copies of the notices. Thus, the contract sets out how notice could be given, to whom, and at what address or telecopier number. Each method of notice required that it be in writing delivered physically or electronically to the party. Nowhere does the contract suggest that notice could be served by delivery to someone other than the party, nor does the contract suggest that a party can substitute notice to the other by giving notice to Stewart Title.

Equisource did not submit any summary judgment proof from which it could be inferred that Stewart Title was Crown's agent for receiving notice of termination. The one other time Equisource terminated the contract, it did so by sending notice to Crown, not to Stewart Title. None of the summary judgment evidence raises a fact question of whether Stewart Title was Crown's agent for service of notice of termination of the contract. Because Equisource did not raise a genuine issue of material fact on its claims or on Crown's counterclaims, the trial court did not err in granting summary judgment dismissing Equisource's claims and awarding Crown judgment on its counterclaims for breach of contract and declaratory judgment. We overrule the second point of error.

**DECLARATORY JUDGMENT**

In its third point of error, Equisource contends that the trial court erred in granting the motion for summary judgment on Crown's action for declaratory judgment because declaratory judgment is not appropriate in this kind of action. The record does not show that Equisource pleaded or argued this contention to the trial court. Rule 166a(c) of the Texas Rules of Civil Procedure states, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX.R.CIV.P. 166a(c). Accordingly, we cannot consider Equisource's contention. *Cockrell v. Republic Mortgage Ins. Co.,* 817 S.W.2d 106, 113 (Tex.App.—Dallas 1991, no writ). We overrule the third point of error.

We reverse the trial court's judgment as to Crown's cause of action for wrongful notice of lis pendens/slander of title and remand that cause to the trial court for further proceedings. In all other respects, the trial court's judgment is affirmed.