

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00148-CV

ENERGICO PRODUCTION, INC.,                                       APPELLANTS
GREEN MEADOW OIL & GAS
CORP., AND STEPHEN W. KNIGHT

V.

THE FROST NATIONAL BANK                                      APPELLEE

----------

### FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

This is an appeal from the trial court's summary judgment for The Frost National Bank in a suit to recover amounts due on three promissory notes. In three issues, appellants contend that summary judgment was improper as to Energico Production, Inc. and Green Meadow Oil & Gas Corp. because a genuine issue of material fact exists as to the amount of liability they owe on the

---

[1]*See* Tex. R. App. P. 47.4.

notes sued upon, that summary judgment was improper as to guarantor Stephen W. Knight for the same reason, and that the trial court's attorney's fees award for appellee was improper because appellee failed to segregate fees among the three appellants. We affirm in part and reverse and remand in part.

## Background

Appellee sued appellants, seeking to recover amounts past due on two notes by Energico as maker and one note by Green Meadow as maker. They alleged that Knight, as guarantor of the three notes, was jointly and severally liable for the past due amounts. Appellee filed a motion for summary judgment as to all three appellants, in which it claimed that it was entitled to judgment as a matter of law on its claims against appellants as follows:

- $279,187.05, plus prejudgment and postjudgment interest, from Energico and Knight, jointly and severally;

- $47,307.53, plus prejudgment and postjudgment interest, from Energico and Knight, jointly and severally;

- Foreclosure of Energico's collateral;

- $45,907.90, plus prejudgment and postjudgment interest, from Green Meadow and Knight, jointly and severally;

- Foreclosure of Green Meadow's collateral;

- Attorney's fees of $17,597, plus postjudgment interest, along with $5,000 for an unsuccessful appeal to the court of appeals and $10,000 for an unsuccessful appeal to the supreme court; and

- Court costs, plus postjudgment interest.

2

Appellants filed a response and objected to some of appellee's summary judgment evidence. The trial court overruled appellants' objections to appellee's summary judgment evidence and granted appellee a final summary judgment on all of its claims in the amounts set forth above.

## Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

## Summary Judgment - Damages

In their first and second issues, appellants contend that appellee failed to meet its summary judgment burden to show how it calculated accrued and unpaid interest on the notes because appellants' responsive evidence shows that appellee's summary judgment affidavit from a vice president is conclusory.

**Appellee's Evidence**

Appellees attached to their motion for summary judgment an affidavit from David Spadafora, a vice president who averred that he had personal knowledge of the facts in the affidavit and that he was a custodian of records for appellee. According to Spadafora, Energico executed and delivered a promissory note as maker to appellee as lender on May 11, 2007 in the principal amount of $559,000 with interest of 9.25% and postmaturity interest of 18%. Spadafora averred that the note provides that Energico promised to pay reasonable attorney's fees and costs for the collection of amounts due under the note. The note is attached to Spadafora's affidavit.

According to Spadafora, to secure the first note, Energico provided appellee with a security interest in its "inventory, accounts, furniture and equipment and one (1) 1962 Oilwell Drawworks Serial No. SK592" and that appellee perfected its security interest in this collateral by proper filing. The security agreement is attached to Spadafora's affidavit. Spadafora also averred that Knight signed a Commercial Guaranty personally guaranteeing the amounts due under the first note to Energico. That guaranty is also attached to the affidavit.

Spadafora next averred that Energico executed and delivered a second promissory note as maker to appellee as lender on January 31, 2008 in the principal amount of $50,000 with interest of 9% and postmaturity interest of 18%. Spadafora averred that this second note provides that Energico promised to pay

4

reasonable attorney's fees and costs for the collection of amounts due under the note. The note is attached to Spadafora's affidavit.

Spadafora further averred that to secure the second note, Energico provided appellee with a security interest in its "inventory, accounts, furniture and equipment" and that appellee perfected its security interest in this collateral by proper filing. The security agreement is attached to Spadafora's affidavit. Spadafora also averred that the Commercial Guaranty Knight signed in connection with the first note also guaranteed the amounts due under the second note to Energico. That guaranty states that it is a continuing guaranty of amounts "now existing or hereafter arising or acquired, on an open and continuing basis."

Spadafora averred that Energico defaulted on both notes and that Knight defaulted on the guaranty. According to Spadafora, appellee made proper demand on Energico and Knight for the amounts due under the notes, and both failed or refused to pay and likewise failed or refused to surrender the collateral. Spadafora averred that after applying "all just and lawful offsets, credits and payments, as of May 26, 2009," the total amount of principal and interest due on the first note was $279,187.05 and the total amount of principal and interest due on the second note was $47,307.53. Spadafora also averred that postmaturity interest was accruing on both notes at a rate of 18% per annum.

As to the third note, Spadafora averred that on January 28, 2008, Green Meadow executed a note as maker in the principal amount of $50,000 at an

5

interest rate of 8.5%, that Green Meadow executed a security agreement giving appellee a security interest in its "inventory, accounts, furniture and equipment," and that Knight guaranteed the repayment of the loan. According to Spadafora, Green Meadow failed to pay $45,907.90 due on the note despite demand, and postmaturity interest was accruing on the note at the rate of 18% per annum. Copies of the note, security agreement, and guaranty are also attached to the affidavit as summary judgment evidence.

Finally, appellee attached as evidence excerpts from Knight's deposition. Knight could not remember when Energico had made the last payment on the first note, but he agreed Energico was in default. When asked, "And I'll represent to you that it's my understanding that the last payment made by Energico on [the first note] was in the amount of $5,172.80 and that occurred on October 16[th] of 2008. Do you have any recollection one way or the other as to last payment date . . . .," Knight said, "That sounds correct." Knight wrote Energico's check payments to appellee himself.

As for the second note, when asked, "I will represent to you that it's my understanding the last payment made on [the second note] was on October 16[th] of 2008 and that payment was in the amount of $1,041.89. Do you have any recollection of that payment being made to the Frost National Bank?," Knight answered, "That sounds correct." Knight admitted that Energico had made some but not all of the payments under the second note. He also admitted that he had not made any payments in his individual capacity on either note. However,

Knight testified that he had a $250,000 certificate of deposit (CD) with appellee that was eventually applied to the principal of the $559,000 note.

Knight agreed that as of May 11, 2007, Energico did not have any inventory and that as of January 2008, it did not have any collateral that it pledged under the security agreement. It also did not own any machinery, equipment, or tools other than the drawworks and some tubing that it had sold to a rancher at the time of the deposition.

Knight identified the notes, security agreements, and guaranties.

Knight also admitted that Green Meadow had not made payments each month as scheduled on its note with appellee and that Green Meadow had no collateral when that note was signed. He had not made any payments individually on the Green Meadow note.

Knight further testified that he could not give any facts supporting his pled affirmative defenses of failure of consideration, laches, waiver, and failure to mitigate damages.

**Appellant's Evidence**

In their response, appellants argued that appellee "failed to show how it calculated the accrued and unpaid interest, including the per diem interest." Appellants produced the deposition testimony of Teresa Woods, which they contend shows that appellee did not produce any evidence of how the note balance was calculated; thus, Spadafora's affidavit testimony regarding the note balance is conclusory. Finally, they contend that they raised a fact issue as to

7

how interest should be calculated because of appellee's failure to timely apply the amount of the CD to the balance due on the first note.

Attached is a letter from appellants' attorney to appellee's attorney with an attached deposition notice for the person "most knowledgeable about" the loans, "requests by the debtor to apply the [CD] held as collateral to the loan, and payment history on the loans . . . [as well as] interest calculations for the loans." Also attached is deposition testimony from Woods, in which she testifies that the CD had already been applied to the loan before she received the file in mid to late January 2009. She did not know how appellee decided to apply the CD to the loan; she reviewed no notes in the file regarding that matter, just the fact that it had been applied. She determined that the loans were unlikely to be repaid, and the bank decided to write them off in February or March 2009. Before then, she had tried to locate the drawworks, but it was in Oklahoma and she could not find it.

Once the loan was charged off, Woods did not work on it any longer. It was assigned to Spadafora, who worked in appellee's loan recovery department. Regarding how the loan balance was calculated, Woods testified,

> We have a department that handles the loan payoff balances at any time. I don't quote them personally. I don't calculate them personally. It's typically something that is run through an accounts department, and they will run those numbers and I will confirm that they appear to be correct based on what I see in the documents as far as the interest rate and the principal amount of the note, but the exact calculation is determined by that department.

Woods testified that she did not have any documents showing the interest calculation on the loan other than what had been produced to appellants.

Woods elaborated that the responsible department calculates the amounts via a computer program and that she was "sure it's their duty to verify that when they put it in the system, that the interest rate is correct and that there are other fees attached that are different from what the note requires." She did not know how the interest rate was calculated before or after the application of any CD proceeds. She agreed, however, that she was the person at the bank with the most knowledge of "the loans that are the subject of the lawsuit" although she did not have any input regarding Knight's request to apply the CD to the first note. She knew when the last payments were made from review of the file, but with regard to interest calculations, she said, "I would have to go back to - - the interest calculations are based on the note and I think anybody in the bank would be in the same position that I am in regards to answering questions on this interest calculation." She agreed she had not personally done any interest calculations or seen a detailed interest calculation.

Woods also went through the list of various documents provided to appellants' counsel; loan committee notes, if any, and notes to the file were not included among them. She did not know whether Knight had been given notice of the application of the CD proceeds to the balance due under the first note.

Finally, Knight's affidavit is attached, in which he avers that he

9

repeatedly requested and demanded . . . that the [CD] be applied to the loan to reduce the accrued interest on the loan, which [appellee] refused to do for over a year, charging me the note rate of interest on the obligations, accruing the note rate of interest on the obligations, but paying Energico a much lower rate on the [CD].

According to Knight, appellee did not provide notice of its application of the CD to the first note or any accounting of how the proceeds were applied, and appellee "has evidently kept that sum in satisfaction of all debt owed by" appellants. Knight stated,

[d]espite repeated requests, individually and through my counsel, for a computation of all payments and interest, no such accounting or computation has been received. In addition, from the attached deposition excerpts of the person most knowledgeable in the bank about the interest calculations, it appears there is no one that has any personal knowledge, but they merely look to a computer program to come up with a number. [Appellee] has yet to provide any detail on the calculations, when and what credits were made, and how [appellee] arrived at the final figure.

Knight also averred that he had informed appellee for over a year of the location of the drawworks, and appellee "took no action to take possession of the drawworks and/or foreclose upon it." Finally, Knight stated that he had never met or talked to Spadafora.

**Applicable Law**

To prevail on its motion for summary judgment to enforce the promissory notes, appellee was required to prove that (1) the notes exist, (2) appellee is the legal owner and holder of the notes, (3) Energico and Green Meadow are the makers of the notes, and (4) a certain balance is due and owing on each note. *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d

10

500, 505 (Tex. App.—El Paso 2010, no pet.); *Levitin v. Michael Group, L.L.C.*, 277 S.W.3d 121, 123 (Tex. App.—Dallas 2009, no pet.). A lender need not file detailed proof the calculations reflecting the balance due on a note; an affidavit by a bank employee which sets forth the total balance due on a note is sufficient to sustain an award of summary judgment. *Hudspeth v. Investor Collection Servs. Ltd. P'ship*, 985 S.W.2d 477, 479 (Tex. App.—San Antonio 1998, no pet.); *Martin v. First Republic Bank Fort Worth*, 799 S.W.2d 482, 485 (Tex. App.—Fort Worth 1990, writ denied); *see also Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 28–29 (Tex. App.—Dallas 1992, no writ); *Gen. Specialties, Inc. v. Charter Nat'l Bank-Houston*, 687 S.W.2d 772, 774 (Tex. App.—Houston [14th Dist.] 1985, no writ).

When a plaintiff alleges that "all conditions precedent have been performed or have occurred," as appellee did here, a defendant must specifically deny any conditions that were not performed or have not occurred. Tex. R. Civ. P. 54; *Greathouse v. Charter Nat'l Bank-Sw.*, 851 S.W.2d 173, 174 (Tex. 1992); *Rockwall Commons Assocs.*, 331 S.W.3d at 508. When a defendant does not specifically deny a plaintiff's performance-of-conditions-precedent pleading, a plaintiff is not encumbered with proof of such performance. *Rockwall Commons Assocs.*, 331 S.W.3d at 508; *Hill v. Thompson & Knight*, 756 S.W.2d 824, 826 (Tex. App.—Dallas 1988, no writ). Appellants did not specifically deny that appellee performed all necessary conditions precedent to enforcing the notes.

All three notes contain the following provision:

11

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). . . . Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

Before a bank can exercise its right of setoff, the debt owed to the bank by the customer must be mature, that is, it must have come due. *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 619 (Tex. 1992) (op. on reh'g) (citing *Stockyards Nat'l Bank v. Presnall*, 194 S.W. 384, 385 (Tex. 1917)). The exception to this rule is when the customer is insolvent. *Id*.

**Analysis**

Appellants contend that they raised a fact issue to defeat summary judgment because they showed that Spadafora's affidavit testimony regarding the amount owed on the notes is deemed conclusory by Woods's assertion that she is the person with the most knowledge about the loans and she does not know how the CD was applied or how the interest rate was calculated.

A corporate employee is generally presumed to possess personal knowledge of facts that he or she would learn in the usual course of employment without having to otherwise prove personal knowledge. *See, e.g., Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 03-09-00566-CV, 2011 WL 2769838, at *11 (Tex. App.—Austin July 12, 2011) (op. on reh'g), *abated for settlement*, 2011 WL 4424491 (Tex. App.—Austin Sept. 23, 2011, order); *Equisource Realty Corp. v. Crown Life Ins. Co.*, 854 S.W.2d 691, 695 (Tex.

12

App.—Dallas 1993, no writ). Spadafora averred that he is a vice president of appellee and is a custodian of records for appellee. This statement sufficiently identifies his position and responsibilities. *See Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 359 (Tex. App.—Dallas 2007, pet. denied); *Stucki v. Noble*, 963 S.W.2d 776, 780 (Tex. App.—San Antonio 1998, pet. denied); *Waite v. BancTexas-Houston, N.A.*, 792 S.W.2d 538, 540 (Tex. App.—Houston [1st Dist.] 1990, no writ).

Although Woods identified herself as the person having the most knowledge of the notes, that does not preclude Spadafora's having superior knowledge than Woods of the limited issue of how the amounts due on the notes were calculated, including how and when the CD was applied to the first Energico note's balance. Additionally, that note did not require appellee to apply the CD proceeds; it gave appellee discretion to do so.[2] Accordingly, we conclude and hold that appellants did not show that Spadafora's affidavit testimony was conclusory and thus failed to raise a fact issue regarding the amounts due under the notes.

For these reasons, we conclude and hold that the trial court did not err by granting appellee's motion for summary judgment as to the amounts due under the three notes and guaranty. We overrule appellants' first and second issues.

---

[2]Additionally, although appellants do not specifically acknowledge that this argument applies solely to the first Energico note, it logically must in that the CD was applied only to that note and not the others.

13

**Summary Judgment - Segregation of Attorney's Fees**

Appellants also contend that the trial court erred by awarding appellee lump sum attorney's fees of $17,597, for which each appellant is jointly and severally liable, because appellee failed to segregate the part of the lump sum attributable to each appellant. A party who seeks to recover attorney's fees must segregate nonrecoverable fees from recoverable fees and must also segregate the fees attributable to different parties. *DMC Valley Ranch, L.L.C. v. HPSC, Inc.*, 315 S.W.3d 898, 906 (Tex. App.—Dallas 2010, no pet.); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991) (providing that fees must be segregated amongst settling and nonsettling defendants). Energico and Green Meadow are separate entities. Although Knight signed one guaranty applicable to both Energico notes, he signed a separate guaranty for the Green Meadow note. Energico had a CD with appellee, which was applied to one of its notes, but there is no evidence of any similar setoff applicable to Green Meadow's note. Appellee had to prove different facts to recover on each of the notes and on Knight's two guaranties; thus, appellee was required to segregate its attorney's fees among the appellants, and the trial court should not have awarded a lump sum for which appellants were jointly and severally liable. *See DMC Valley Ranch, L.L.C.*, 315 S.W.3d at 906. Because it did not do so, we sustain appellants' third issue.

**Conclusion**

Having sustained appellants' third issue, we remand the part of the trial court's judgment awarding attorney's fees for further proceedings in accordance with this opinion. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006). Having overruled appellants' first two issues, we affirm the remainder of the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED:  January 26, 2012