02-11-148-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00148-CV

 

 


 
 
 Energico Production, Inc., Green Meadow Oil &
 Gas Corp., and Stephen W. Knight
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 The Frost National Bank
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 352nd
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          This
is an appeal from the trial court’s summary judgment for The Frost National
Bank in a suit to recover amounts due on three promissory notes.  In three
issues, appellants contend that summary judgment was improper as to Energico
Production, Inc. and Green Meadow Oil & Gas Corp. because a genuine issue
of material fact exists as to the amount of liability they owe on the notes
sued upon, that summary judgment was improper as to guarantor Stephen W. Knight
for the same reason, and that the trial court’s attorney’s fees award for
appellee was improper because appellee failed to segregate fees among the three
appellants.  We affirm in part and reverse and remand in part.

Background

          Appellee
sued appellants, seeking to recover amounts past due on two notes by Energico
as maker and one note by Green Meadow as maker.  They alleged that Knight, as
guarantor of the three notes, was jointly and severally liable for the past due
amounts.  Appellee filed a motion for summary judgment as to all three
appellants, in which it claimed that it was entitled to judgment as a matter of
law on its claims against appellants as follows:

●        $279,187.05,
plus prejudgment and postjudgment interest, from Energico and Knight, jointly
and severally;

 

●        $47,307.53,
plus prejudgment and postjudgment interest, from Energico and Knight, jointly
and severally;

 

●        Foreclosure
of Energico’s collateral;

 

●        $45,907.90,
plus prejudgment and postjudgment interest, from Green Meadow and Knight,
jointly and severally;

 

●        Foreclosure
of Green Meadow’s collateral;

 

●        Attorney’s
fees of $17,597, plus postjudgment interest, along with $5,000 for an
unsuccessful appeal to the court of appeals and $10,000 for an unsuccessful
appeal to the supreme court; and

 

●        Court
costs, plus postjudgment interest.

Appellants
filed a response and objected to some of appellee’s summary judgment evidence. 
The trial court overruled appellants’ objections to appellee’s summary judgment
evidence and granted appellee a final summary judgment on all of its claims in
the amounts set forth above.

Standard
of Review

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315 S.W.3d
860, 862 (Tex. 2010).  We consider the evidence presented in the light most
favorable to the nonmovant, crediting evidence favorable to the nonmovant if
reasonable jurors could and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A plaintiff is entitled
to summary judgment on a cause of action if it conclusively proves all
essential elements of the claim.  See Tex. R. Civ. P. 166a(a), (c); MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).

Summary
Judgment - Damages

          In
their first and second issues, appellants contend that appellee failed to meet
its summary judgment burden to show how it calculated accrued and unpaid
interest on the notes because appellants’ responsive evidence shows that
appellee’s summary judgment affidavit from a vice president is conclusory.

Appellee’s
Evidence

          Appellees
attached to their motion for summary judgment an affidavit from David
Spadafora, a vice president who averred that he had personal knowledge of the
facts in the affidavit and that he was a custodian of records for appellee. 
According to Spadafora, Energico executed and delivered a promissory note as
maker to appellee as lender on May 11, 2007 in the principal amount of $559,000
with interest of 9.25% and postmaturity interest of 18%.  Spadafora averred
that the note provides that Energico promised to pay reasonable attorney’s fees
and costs for the collection of amounts due under the note.  The note is
attached to Spadafora’s affidavit.

          According
to Spadafora, to secure the first note, Energico provided appellee with a
security interest in its “inventory, accounts, furniture and equipment and one
(1) 1962 Oilwell Drawworks Serial No. SK592” and that appellee perfected its
security interest in this collateral by proper filing.  The security agreement
is attached to Spadafora’s affidavit.  Spadafora also averred that Knight
signed a Commercial Guaranty personally guaranteeing the amounts due under the
first note to Energico.  That guaranty is also attached to the affidavit.

          Spadafora
next averred that Energico executed and delivered a second promissory note as
maker to appellee as lender on January 31, 2008 in the principal amount of
$50,000 with interest of 9% and postmaturity interest of 18%.  Spadafora
averred that this second note provides that Energico promised to pay reasonable
attorney’s fees and costs for the collection of amounts due under the note. 
The note is attached to Spadafora’s affidavit.

          Spadafora
further averred that to secure the second note, Energico provided appellee with
a security interest in its “inventory, accounts, furniture and equipment” and
that appellee perfected its security interest in this collateral by proper
filing.  The security agreement is attached to Spadafora’s affidavit. 
Spadafora also averred that the Commercial Guaranty Knight signed in connection
with the first note also guaranteed the amounts due under the second note to
Energico.  That guaranty states that it is a continuing guaranty of amounts
“now existing or hereafter arising or acquired, on an open and continuing basis.”

          Spadafora
averred that Energico defaulted on both notes and that Knight defaulted on the
guaranty.  According to Spadafora, appellee made proper demand on Energico and
Knight for the amounts due under the notes, and both failed or refused to pay
and likewise failed or refused to surrender the collateral.  Spadafora averred
that after applying “all just and lawful offsets, credits and payments, as of
May 26, 2009,” the total amount of principal and interest due on the first note
was $279,187.05 and the total amount of principal and interest due on the
second note was $47,307.53.  Spadafora also averred that postmaturity interest
was accruing on both notes at a rate of 18% per annum.

As
to the third note, Spadafora averred that on January 28, 2008, Green Meadow
executed a note as maker in the principal amount of $50,000 at an interest rate
of 8.5%, that Green Meadow executed a security agreement giving appellee a
security interest in its “inventory, accounts, furniture and equipment,” and that
Knight guaranteed the repayment of the loan.  According to Spadafora, Green
Meadow failed to pay $45,907.90 due on the note despite demand, and
postmaturity interest was accruing on the note at the rate of 18% per annum.  Copies
of the note, security agreement, and guaranty are also attached to the
affidavit as summary judgment evidence.

Finally,
appellee attached as evidence excerpts from Knight’s deposition.  Knight could
not remember when Energico had made the last payment on the first note, but he
agreed Energico was in default.  When asked, “And I’ll represent to you that
it’s my understanding that the last payment made by Energico on [the first
note] was in the amount of $5,172.80 and that occurred on October 16th
of 2008.  Do you have any recollection one way or the other as to last payment
date . . . .,” Knight said, “That sounds correct.”  Knight wrote Energico’s
check payments to appellee himself.

As
for the second note, when asked, “I will represent to you that it’s my
understanding the last payment made on [the second note] was on October 16th
of 2008 and that payment was in the amount of $1,041.89.  Do you have any
recollection of that payment being made to the Frost National Bank?,” Knight
answered, “That sounds correct.”  Knight admitted that Energico had made some
but not all of the payments under the second note.  He also admitted that he
had not made any payments in his individual capacity on either note.  However,
Knight testified that he had a $250,000 certificate of deposit (CD) with appellee
that was eventually applied to the principal of the $559,000 note.

Knight
agreed that as of May 11, 2007, Energico did not have any inventory and that as
of January 2008, it did not have any collateral that it pledged under the
security agreement.  It also did not own any machinery, equipment, or tools
other than the drawworks and some tubing that it had sold to a rancher at the
time of the deposition.

Knight
identified the notes, security agreements, and guaranties.

Knight
also admitted that Green Meadow had not made payments each month as scheduled
on its note with appellee and that Green Meadow had no collateral when that
note was signed.  He had not made any payments individually on the Green Meadow
note.

Knight
further testified that he could not give any facts supporting his pled
affirmative defenses of failure of consideration, laches, waiver, and failure
to mitigate damages.

Appellant’s
Evidence

In
their response, appellants argued that appellee “failed to show how it
calculated the accrued and unpaid interest, including the per diem interest.” 
Appellants produced the deposition testimony of Teresa Woods, which they
contend shows that appellee did not produce any evidence of how the note
balance was calculated; thus, Spadafora’s affidavit testimony regarding the
note balance is conclusory.  Finally, they contend that they raised a fact
issue as to how interest should be calculated because of appellee’s failure to
timely apply the amount of the CD to the balance due on the first note.

Attached
is a letter from appellants’ attorney to appellee’s attorney with an attached
deposition notice for the person “most knowledgeable about” the loans,
“requests by the debtor to apply the [CD] held as collateral to the loan, and
payment history on the loans . . . [as well as] interest calculations for the
loans.”  Also attached is deposition testimony from Woods, in which she testifies
that the CD had already been applied to the loan before she received the file
in mid to late January 2009.  She did not know how appellee decided to apply
the CD to the loan; she reviewed no notes in the file regarding that matter,
just the fact that it had been applied.  She determined that the loans were
unlikely to be repaid, and the bank decided to write them off in February or
March 2009.  Before then, she had tried to locate the drawworks, but it was in
Oklahoma and she could not find it.

Once
the loan was charged off, Woods did not work on it any longer.  It was assigned
to Spadafora, who worked in appellee’s loan recovery department.  Regarding how
the loan balance was calculated, Woods testified,

          We have a
department that handles the loan payoff balances at any time.  I don’t quote
them personally.  I don’t calculate them personally.  It’s typically something
that is run through an accounts department, and they will run those numbers and
I will confirm that they appear to be correct based on what I see in the
documents as far as the interest rate and the principal amount of the note, but
the exact calculation is determined by that department.

Woods
testified that she did not have any documents showing the interest calculation
on the loan other than what had been produced to appellants.

Woods
elaborated that the responsible department calculates the amounts via a
computer program and that she was “sure it’s their duty to verify that when
they put it in the system, that the interest rate is correct and that there are
other fees attached that are different from what the note requires.”  She did
not know how the interest rate was calculated before or after the application
of any CD proceeds.  She agreed, however, that she was the person at the bank
with the most knowledge of “the loans that are the subject of the lawsuit” although
she did not have any input regarding Knight’s request to apply the CD to the
first note.  She knew when the last payments were made from review of the file,
but with regard to interest calculations, she said, “I would have to go back to
- - the interest calculations are based on the note and I think anybody in the
bank would be in the same position that I am in regards to answering questions
on this interest calculation.”  She agreed she had not personally done any
interest calculations or seen a detailed interest calculation.

Woods
also went through the list of various documents provided to appellants’
counsel; loan committee notes, if any, and notes to the file were not included
among them.  She did not know whether Knight had been given notice of the
application of the CD proceeds to the balance due under the first note.

Finally,
Knight’s affidavit is attached, in which he avers that he

repeatedly requested
and demanded . . . that the [CD] be applied to the loan to reduce the accrued
interest on the loan, which [appellee] refused to do for over a year, charging
me the note rate of interest on the obligations, accruing the note rate of
interest on the obligations, but paying Energico a much lower rate on the [CD].

According
to Knight, appellee did not provide notice of its application of the CD to the
first note or any accounting of how the proceeds were applied, and appellee
“has evidently kept that sum in satisfaction of all debt owed by” appellants. 
Knight stated,

[d]espite repeated
requests, individually and through my counsel, for a computation of all
payments and interest, no such accounting or computation has been received.  In
addition, from the attached deposition excerpts of the person most
knowledgeable in the bank about the interest calculations, it appears there is
no one that has any personal knowledge, but they merely look to a computer
program to come up with a number.  [Appellee] has yet to provide any detail on
the calculations, when and what credits were made, and how [appellee] arrived
at the final figure.

Knight
also averred that he had informed appellee for over a year of the location of
the drawworks, and appellee “took no action to take possession of the drawworks
and/or foreclose upon it.”  Finally, Knight stated that he had never met or
talked to Spadafora.

Applicable
Law

To
prevail on its motion for summary judgment to enforce the promissory notes, appellee
was required to prove that (1) the notes exist, (2) appellee is the legal owner
and holder of the notes, (3) Energico and Green Meadow are the makers of the
notes, and (4) a certain balance is due and owing on each note.  Rockwall
Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I, 331 S.W.3d 500, 505 (Tex.
App.––El Paso 2010, no pet.); Levitin v. Michael Group, L.L.C., 277
S.W.3d 121, 123 (Tex. App.––Dallas 2009, no pet.).  A lender need not file
detailed proof the calculations reflecting the balance due on a note; an
affidavit by a bank employee which sets forth the total balance due on a note
is sufficient to sustain an award of summary judgment.  Hudspeth v. Investor
Collection Servs. Ltd. P’ship, 985 S.W.2d 477, 479 (Tex. App.––San Antonio
1998, no pet.); Martin v. First Republic Bank Fort Worth, 799 S.W.2d
482, 485 (Tex. App.––Fort Worth 1990, writ denied); see also Thompson v.
Chrysler First Bus. Credit Corp., 840 S.W.2d 25, 28–29 (Tex. App.––Dallas
1992, no writ); Gen. Specialties, Inc. v. Charter Nat’l Bank-Houston,
687 S.W.2d 772, 774 (Tex. App.––Houston [14th Dist.] 1985, no writ).

When
a plaintiff alleges that “all conditions precedent have been performed or have
occurred,” as appellee did here, a defendant must specifically deny any
conditions that were not performed or have not occurred.  Tex. R. Civ. P. 54; Greathouse
v. Charter Nat’l Bank-Sw., 851 S.W.2d 173, 174 (Tex. 1992); Rockwall
Commons Assocs., 331 S.W.3d at 508.  When a defendant does not specifically
deny a plaintiff’s performance-of-conditions-precedent pleading, a plaintiff is
not encumbered with proof of such performance.  Rockwall Commons Assocs.,
331 S.W.3d at 508; Hill v. Thompson & Knight, 756 S.W.2d 824, 826
(Tex. App.––Dallas 1988, no writ).  Appellants did not specifically deny that
appellee performed all necessary conditions precedent to enforcing the notes.

All
three notes contain the following provision:

RIGHT OF SETOFF.  To
the extent permitted by applicable law, Lender reserves a right of setoff in
all Borrower’s accounts with Lender (whether checking, savings, or some other
account). . . .  Borrower authorizes Lender, to the extent permitted by
applicable law, to charge or setoff all sums owing on the indebtedness against
any and all such accounts.

Before
a bank can exercise its right of setoff, the debt owed to the bank by the
customer must be mature, that is, it must have come due.  Bandy v. First
State Bank, Overton, Tex., 835 S.W.2d 609, 619 (Tex. 1992) (op. on reh’g) (citing
Stockyards Nat’l Bank v. Presnall, 194 S.W. 384, 385 (Tex. 1917)).  The
exception to this rule is when the customer is insolvent.  Id.

Analysis

Appellants
contend that they raised a fact issue to defeat summary judgment because they
showed that Spadafora’s affidavit testimony regarding the amount owed on the
notes is deemed conclusory by Woods’s assertion that she is the person with the
most knowledge about the loans and she does not know how the CD was applied or how
the interest rate was calculated.

A
corporate employee is generally presumed to possess personal knowledge of facts
that he or she would learn in the usual course of employment without having to
otherwise prove personal knowledge.  See, e.g., Fernea v.
Merrill Lynch Pierce Fenner & Smith, Inc., No. 03-09-00566-CV, 2011 WL
2769838, at *11 (Tex. App.––Austin July 12, 2011) (op. on reh’g), abated for
settlement, 2011 WL 4424491 (Tex. App.––Austin Sept. 23, 2011, order); Equisource
Realty Corp. v. Crown Life Ins. Co., 854 S.W.2d 691, 695 (Tex. App.––Dallas
1993, no writ).  Spadafora averred that he is a vice president of appellee and
is a custodian of records for appellee.  This statement sufficiently identifies
his position and responsibilities.  See Kyle v. Countrywide Home Loans, Inc.,
232 S.W.3d 355, 359 (Tex. App.––Dallas 2007, pet. denied); Stucki v. Noble,
963 S.W.2d 776, 780 (Tex. App.––San Antonio 1998, pet. denied); Waite v.
BancTexas-Houston, N.A., 792 S.W.2d 538, 540 (Tex. App.––Houston [1st
Dist.] 1990, no writ).

Although
Woods identified herself as the person having the most knowledge of the notes,
that does not preclude Spadafora’s having superior knowledge than Woods of the
limited issue of how the amounts due on the notes were calculated, including how
and when the CD was applied to the first Energico note’s balance. 
Additionally, that note did not require appellee to apply the CD proceeds; it
gave appellee discretion to do so.[2]  Accordingly, we conclude
and hold that appellants did not show that Spadafora’s affidavit testimony was
conclusory and thus failed to raise a fact issue regarding the amounts due
under the notes.

For
these reasons, we conclude and hold that the trial court did not err by
granting appellee’s motion for summary judgment as to the amounts due under the
three notes and guaranty.  We overrule appellants’ first and second issues.

Summary Judgment - Segregation of Attorney’s
Fees

Appellants
also contend that the trial court erred by awarding appellee lump sum
attorney’s fees of $17,597, for which each appellant is jointly and severally
liable, because appellee failed to segregate the part of the lump sum
attributable to each appellant.  A party who seeks to recover attorney’s fees
must segregate nonrecoverable fees from recoverable fees and must also
segregate the fees attributable to different parties.  DMC Valley Ranch, L.L.C.
v. HPSC, Inc., 315 S.W.3d 898, 906 (Tex. App.––Dallas 2010, no pet.); see
also Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11 (Tex. 1991)
(providing that fees must be segregated amongst settling and nonsettling
defendants).  Energico and Green Meadow are separate entities.  Although Knight
signed one guaranty applicable to both Energico notes, he signed a separate
guaranty for the Green Meadow note.  Energico had a CD with appellee, which was
applied to one of its notes, but there is no evidence of any similar setoff applicable
to Green Meadow’s note.  Appellee had to prove different facts to recover on each
of the notes and on Knight’s two guaranties; thus, appellee was required to
segregate its attorney’s fees among the appellants, and the trial court should
not have awarded a lump sum for which appellants were jointly and severally
liable.  See DMC Valley Ranch, L.L.C., 315 S.W.3d at 906.  Because it
did not do so, we sustain appellants’ third issue.

Conclusion

Having sustained appellants’ third issue, we
remand the part of the trial court’s judgment awarding attorney’s fees for
further proceedings in accordance with this opinion.  See Tony Gullo Motors
I, L.P. v. Chapa, 212 S.W.3d 299, 314 (Tex. 2006).  Having overruled
appellants’ first two issues, we affirm the remainder of the trial court’s
judgment.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and WALKER, JJ.

 

DELIVERED:  January 26, 2012








 









[1]See Tex. R. App. P. 47.4.





[2]Additionally, although
appellants do not specifically acknowledge that this argument applies solely to
the first Energico note, it logically must in that the CD was applied only to
that note and not the others.